IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOVIS AUTO SUPPLY, INC., on behalf of itself and all others similarly situated,<br><br>                        Plaintiff,<br><br>vs.<br><br>ROBERT BOSCH, LLC; CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A.. LLC; MANN + HUMMEL USA, INC.; BALDWIN FILTERS, INC.; ARVINMERITOR, INC.; WIX FILTRATION CORPORATION LLC.; and HONEYWELL INTERNATIONAL, INC.<br><br>                        Defendants. | Case No.<br><br>JURY TRIAL DEMANDED<br><br>FILED: MAY 19, 2008<br>08 cv 2903   JH<br>JUDGE NORGLE<br>MAGISTRATE JUDGE BROWN |

## I.   INTRODUCTION

1. Plaintiff Hovis Auto Supply, Inc. ("Plaintiff") brings this action on behalf of itself individually and on behalf of a plaintiff class (the "Class") consisting of all persons and entities in the United States, who purchased oil filters directly from a defendant between at least as early as January 1, 1999 and the present (the "Class Period").

2. Defendants are domestic sellers of Filters. For purposes of this Complaint, Filters includes oil, fuel, air, transmission and cabin air filters. Plaintiff alleges that during the Class Period, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which Filters would be sold. As a result of defendants' unlawful conduct, plaintiff and the other members of the Class paid artificially inflated prices for those products. Such prices exceeded the amount they would have paid if the prices had been determined by a competitive market.

## II. JURISDICTION AND VENUE

3. Plaintiff brings this action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act (15 U.S.C. § 1).

4. This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

6. Venue is proper in this judicial district because during the Class Period, one or more of the defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

## III. THE PARTIES

### A. Plaintiff

7. During the Class Period, Plaintiff purchased Filters directly from one or more defendants. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

### B. Defendants

8. Defendant Robert Bosch LLC is headquartered in Broadview, Illinois. During the Class Period, Robert Bosch LLC sold and distributed Filters to customers in the United States.

9. Defendant Champion Laboratories Inc. is a Delaware corporation with its principal place of business in Albion, Illinois. During the class period, Champion Laboratories Inc. manufactured, sold and distributed Filters to customers in the United States.

10. Defendant Purolator Filters N.A. LLC is headquartered in Fayetteville, North Carolina. Purolator Filters N.A. LLC is a joint venture between Robert Bosch LLC and Mann + Hummel U.S.A. Inc. and was formed in or about April 2006 when they acquired the Purolator oil, air, fuel and cabin filter business from ArvinMeritor (formerly known as Arvin Industries Inc.). During the Class Period, Purolator Filters N.A. sold and distributed Filters to customers in the United States.

11. Defendant Mann + Hummel. USA Inc. is headquartered in Portage, Michigan. During the Class period, Mann + Hummel USA Inc. sold and distributed Filters to customers in the United States.

12. Defendant Baldwin Filters Inc. is headquartered in Kearney, Nebraska. During the Class Period, Baldwin Filters Inc. sold and distributed Filters to customers in the United States.

13. ArvinMeritor, Inc. is a Nevada corporation with its headquarters in Troy, Michigan. In or about February 1999, Arvin Industries acquired Purolator's filter business from Mark IV Industries Inc. During the Class Period, ArvinMeritor, Inc. sold and distributed Filters to customers in the United States.

14. Defendant Wix Filtration Corporation LLC is headquartered in Gastonia, North Carolina. During the Class Period, Wix Filtration Corporation LLC sold and distributed Filters to customers in the United States.

15. Defendant Honeywell International, Inc. is headquartered in Morristown, New Jersey. During the Class Period, Honeywell International, Inc. sold and distributed Filters to customers in the United States.

### C. Agents and Co-Conspirators

16. The acts alleged against the defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses or affairs.

17. Certain other persons, firms, corporations and entities have participated as unnamed co-conspirators as defendants in the violations and conspiracy alleged herein. In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

18. At all relevant times, each defendant was an agent of each of the remaining defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each defendant ratified and/or authorized the wrongful acts of each of the defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of this action.

## IV. CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities in the United States who purchased Filters directly from a defendant between at least as early as January 1, 1999 and the present. This class excludes any judicial officer who is assigned to hear any aspect of this action, governmental entities, defendants, co-conspirators, other sellers or providers of Filters,

and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

20.  Plaintiff believes that there are hundreds, if not thousands, of Class members as above described, the exact number and their identities being known by defendants.

21.  The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

22.  There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

    a.  Whether defendants and their co conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of Filters and/or engaged in market allocation for those products sold in the United States;

    b.  The identity of the participants in the conspiracy;

    c.  The duration of the conspiracy alleged in this complaint and the nature and character of the acts performed by defendants and their co conspirators in furtherance of the conspiracy;

    d.  Whether the alleged conspiracy violated Section 1 of the Sherman Act;

    e.  Whether the conduct of defendants and their co conspirators, as alleged in this complaint, caused injury to the business and property of Plaintiff and other members of the Class;

    f.  The effect of defendants' conspiracy on the prices of Filters sold in the United States during the Class Period; and

g.  The appropriate measure of damages sustained by Plaintiff and other members of the Class.

23. Plaintiff is a member of the Class, Plaintiff's claims are typical of the claims of the Class members, and plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a direct purchaser of Filters and its interests coincide with and are not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

24. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

25. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

26. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of defendants and their co conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust

claim such as is asserted in this complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## V. TRADE AND COMMERCE

28.     During the Class Period, defendants sold substantial quantities of Filters in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

29.     The business activities of defendants that are the subject of this action were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## VI. FACTUAL ALLEGATIONS

### A.      Background of the Domestic Filter Market

30.     Filters, as defined herein, includes oil, fuel, air, transmission and cabin air filters. Oil filters are designed to keep damaging components away from sensitive parts of combustion engines. Fuel filters protect the fuel system components in a vehicle from contaminants in the fuel. Air filters are designed to remove soot, carbon, abrasives and other contaminants from the air before the air mixes with fuel in the engine conduction system. Transmission filters are designed to protect transmissions against contaminants in the transmission fluid system. Cabin air filters are designed to capture airborne contaminants that enter the vehicle cabin through its heating, air conditioning and defrosting system.

31.     Defendants are the principal manufactures and distributors of Filters in the United States. They sell to Original Equipment Manufacturers, such as automobile manufacturers, which utilize Filters during the vehicle manufacturing process, and also to various aftermarket entities such as retailers, auto shops and service stations, which distribute Filters as replacement products.

32. The United States market for Filters is highly concentrated with a small number of major companies, almost all of whom are named as defendants in this complaint, manufacturing and selling these products.

33. Domestic sales of Filters in the United States are substantial. Sales of aftermarket automotive oil, fuel, transmission and cabin air filters, which is the largest segment of the Filters market, exceed one billion dollars annually.

34. Filters are highly fungible and are perceived as commodity products by customers. Purchasers decide, and competitors compete, largely based on price.

35. Although Filters are fungible between sellers, there are no ready substitutes available for these products because their utility requires conformance with technical specifications of the engines in which they are to be used.

36. There are substantial barriers to enter the domestic Filter industry, including: (1) entrenched market positions by the incumbent Filter manufacturers; (2) the high costs associated with the manufacture of Filters; and (3) the need to develop a customer base. These barriers facilitate the conspiracy alleged herein because they insulate existing Filter manufacturers from new competition and perpetuate the high market concentration.

37. Within the Filters market each of the defendants here participates in trade association activities that provide opportunities for collusion. For example, the defendants, or their affiliated entities, are members of the Filter Manufacturers Council which was founded in 1971 to represent interests of North American manufacturers of filtration products.

38. The structure of the Filters market facilitates clandestine price fixing activity because it is highly concentrated with few sellers, almost all of whom are the defendants, Filters are highly standardized products, demand is inelastic and there are substantial barriers to entry.

B.     **Defendants' Antitrust Violations**

39.    Beginning at least as early as January 1999, the exact dates being unknown to Plaintiff, defendants and their co conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize prices of Filters sold in the United States in violation of Section 1 of the Sherman Act.

40.    The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and their co conspirators, the substantial terms of which were to fix, raise and maintain, or stabilize prices for Filters and/or engage in market allocation for those products in the United States.

41.    During the Class Period, defendants facilitated their conspiracy by instructing employees to contact competitors regularly to exchange information about price of Filter products. Such exchanges occurred by telephone, facsimile, e-mail and during face to face meetings.

42.    Defendants provided advance notice concerning price increases to competitors and received similar advance notice concerning price increases from competitors. For example, in June 1999 a Purolator senior executive faxed his counterpart at Honeywell a letter which announced a 6% price increase for prices of all Purolator branded filters effective on August 15, 1999. The notice was not sent to the company's customers until two weeks later. Defendants implemented a price increase in 1999.

43.    In our about September 1993, senior officials at Champion Laboratories Inc. directed the company's National Accounts Manager to contact his counterpart at Purolator to inform him that Champion Laboratories Inc. intended to "bid high" on an aftermarket filter bid.

44. In February 2004, at a meeting of Champion Laboratories Inc. sales representatives, the company's president informed his sales team that Champion Laboratories, Inc. planned to increase prices and instructed the team to ensure that competitors followed.

45. An internal company e-mail from 2004 with the subject line "price increases," acknowledges that Champion Laboratories Inc. and other defendants had agreed to a coordinated price increase. Defendants implemented two price increases in 2004.

46. Defendants' price increases for Filters in 1999, early 2004, late 2004 and early 2005 ranged from about 4% to 6% each.

47. In formulating and effectuating the aforesaid contract, combination or conspiracy, defendants and their co conspirators did those things that they unlawfully combined and conspired to do, including, among other things:

 a.   agreeing to charge prices at certain levels and otherwise to fix, increase, maintain and/or stabilize prices of Filters and/or allocate the market;

 b.   exchanging information with competitors about sales prices for Filters;

 c.   monitoring and implementation of the arrangements among cartel members; and

 d.   marketing and selling Filters at the agreed upon prices.

48. The activities described above have been engaged in by defendants and their co-conspirators for the purpose of effectuating the unlawful agreements to fix, maintain, raise and/or stabilize prices of Filters and/or engaged in market allocation for those products.

### VII. FRAUDULENT CONCEALMENT

49. Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, at or shortly prior to the filing of this complaint.

50. Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators to avoid detection and affirmatively conceal such violations.

51. As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by plaintiff and the members of the Class.

52. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

53. Beginning in January 1999, or at some earlier time, defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Filters in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

54. Defendants' unlawful conduct resulted in artificially high prices charged by defendants and their co conspirators to Plaintiff and the members of the Class for Filters.

55. Plaintiff and members of the Class had to pay more for Filters than they would have paid in a competitive marketplace.

56. Plaintiff seeks to recover for these overcharge damages.

57. As a direct and proximate result of defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Filters than they would have paid absent defendants' conduct. Plaintiff's

injuries are of the type the antitrust laws were designed to prevent and flow from that which makes defendants' conduct unlawful.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

C.    That judgment be entered for plaintiff and members of the Class against defendants for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.    That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1)    continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

(2)    communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of any product except to the extent necessary in connection with a bona fide sales transactions between the parties to such communications.

E. That plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all triable issues.

/s/ Steven A. Hart, Esq.
Steven A. Hart, Esq. (#6211008)
Attorneys for Defendant
**SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.**
233 South Wacker Drive
Sears Tower-Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645.7800
Facsimile: (312) 645.7711

Bruce L. Simon
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008